**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-4084**

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

DARRELL L. WITCHER,

Defendant – Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. Henry E. Hudson, Senior District Judge. (3:17-cr-00111-HEH-2)

Submitted: September 27, 2018                    Decided: October 31, 2018

Before WILKINSON and DIAZ, Circuit Judges, and SHEDD, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

Miriam Airington-Fisher, AIRINGTON OVERHOLSER & ROCKECHARLIE, PLLC, Richmond, Virginia, for Appellant. G. Zachary Terwilliger, United States Attorney, Alexandria, Virginia, Heather Hart Mansfield, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

On November 15, 2016, Richmond police officers attempted to stop a vehicle driven by Darrell L. Witcher because it had a defective taillight. Instead of stopping, Witcher sped away and attempted to elude the officers. During the ensuing chase, Witcher's passenger, Tynell D. Jones, threw some firearms out of the passenger window. Shortly thereafter, the officers apprehended the men and recovered two firearms from the pursuit route: a Smith & Wesson .40 caliber handgun and a Glock .40 caliber handgun that had a large capacity magazine. Witcher, who was a convicted felon, eventually pled guilty to possessing the Smith & Wesson handgun in violation of 18 U.S.C. § 922(g)(1).[1] Witcher now appeals his 78-month sentence, arguing that the district court procedurally erred by miscalculating his advisory sentencing range. We affirm.

"Although the sentencing guidelines are only advisory, improper calculation of a guideline range constitutes significant procedural error, making the sentence procedurally unreasonable and subject to being vacated." *United States v. Hargrove*, 701 F.3d 156, 161 (4th Cir. 2012). To assess whether a district court properly calculated the guideline range, including its application of any sentencing enhancements, we review the court's legal conclusions de novo and its factual findings for clear error. *United States v. Fluker*, 891 F.3d 541, 547 (4th Cir. 2018).

In calculating Witcher's advisory sentencing range, the district court set his total offense level at 19. To reach this level, the court started with a base offense level of 20

---

[1] Jones pled guilty to illegally possessing the Glock.

based on its finding that the offense involved a semiautomatic firearm capable of accepting a large capacity magazine (*i.e.*, the Glock), *see* U.S.S.G. § 2K2.1(a)(4)(B)(i)(I); added two levels based on its finding that the offense involved three firearms, s*ee* U.S.S.G. § 2K2.1(b)(1)(A); and subtracted three levels based on its finding that Witcher accepted responsibility, *see* U.S.S.G. § 3E1.1. Because Witcher had a criminal history category of VI, his advisory guideline range was 63-78 months. Explaining its decision to impose the 78-month sentence, the court specifically referenced Witcher's extensive criminal history, the fact that Witcher was on probation when this offense occurred, and the fact that Witcher had violated probation on numerous other occasions. The court noted that no prior sentence or supervision period deterred Witcher or promoted respect for the law, and it concluded that these factors, as well as protection of the community, warranted the sentence under 18 U.S.C. § 3553(a). *See* J.A. 112-13.[2]

Witcher contends that the district court erred in two respects. First, he argues that the court erroneously found that his offense involved a semiautomatic firearm capable of accepting a large capacity magazine because the evidence establishes that Jones alone possessed the Glock. Second, he argues that the court erroneously found that his offense involved three firearms because the evidence establishes that only two firearms were

---

[2] Prior to the sentencing hearing, the district court notified the parties that it was considering imposing an upward variance from the applicable guideline range based on Witcher's criminal history, the need to promote respect for the law, and the need to provide adequate deterrence to criminal conduct. J.A. 5. After overruling Witcher's objections and setting the advisory sentencing range at 63-78 months, the court withdrew the variance notice. In doing so, however, the court explained that even if it had sustained Witcher's objections, it would nonetheless have set the range at 63-78 months. J.A. 104.

recovered. For these reasons, Witcher challenges the setting of his base offense level at 20 pursuant to § 2K2.1(a)(4)(B)(i)(I) and the addition of two levels pursuant to § 2K2.1(b)(1)(A). In his view, the court should have set his base offense level at 14 and, with a two-level acceptance of responsibility adjustment, set his total offense level at 12, which would have yielded an advisory sentencing range of 30-37 months. We disagree.

At sentencing, the government presented the testimony of ATF Special Agent Josh Valot, recent video clips from Facebook, and audio recordings of several phone calls Witcher made while incarcerated. In one video clip, Witcher and Jones are together, and Jones is holding a firearm with a large capacity magazine. In one jail phone call, Witcher explained that he fled from police because he thought the vehicle he was driving was stolen and to allow Jones "to play . . . football." Supp. J.A. 1. Witcher's football reference is an apparent admission that he attempted to elude police in part so that Jones could dispose of the firearms. In another jail phone call, Witcher stated that his "strap" had been found, but "it was triple. . . . They got two." Supp. J.A. 2. He also stated that the third firearm was "the jank with the beam on it." *Id.* Agent Valot testified, based on his experience, that a "strap" is a firearm and a "jank with a beam" is a firearm with a laser sight. J.A. 78.

After considering this evidence, the district court held Witcher accountable for the Glock as well as the Smith and Wesson under a constructive possession theory because of the Glock's obvious and distinctive appearance and because Jones threw it from the vehicle while Witcher attempted to elude the officers. *See, e.g.*, *Henderson v. United States*, 135 S.Ct. 1780, 1784 (2015) ("Constructive possession is established when a

person, though lacking such physical custody, still has the power and intent to exercise control over the object."); *United States v. Al Sabahi*, 719 F.3d 305, 311 (4th Cir. 2013) ("The government can establish constructive possession by direct or circumstantial evidence."); *United States v. Chambers*, 918 F.2d 1455, 1458 (9th Cir. 1990) ("Conduct by the driver of a vehicle that appears intended to aid a passenger in disposing of [contraband] is probative of joint possession of the [contraband]."). The court also held Witcher accountable for a third, unrecovered, firearm because in his jail phone calls he "dispatched someone – a group of people out to look for the weapon," he "was very descriptive of it," and he "was adamant that they needed to find it." J.A. 103.

Sufficient evidence exists in the record to support the district court's findings underlying the guideline calculation. We therefore hold that the findings are not clearly erroneous and that the sentence should be affirmed. *See Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.").[3] We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*

---

[3] Alternatively, the government argues that the alleged procedural sentencing errors are harmless because the district court indicated that it would have utilized the same advisory sentencing range even if it had sustained Witcher's objections. Because we have concluded that the court did not procedurally err, we need not address this alternative argument.